IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Kevin Bouknight,<br><br>      Plaintiff,<br>  v.<br><br>KW Associates, LLC, *d/b/a KW Beverage,*<br>*d/b/a Budweiser of Columbia*; Jim Kirkham,<br><br>      Defendants. | C/A. No. 3:16-cv-0210-CMC-PJG<br><br><br>**Opinion and Order**<br>**Adopting Report and Recommendation**<br>**And Granting Motion to Dismiss** |

This matter is before the court on Defendants' motion to dismiss Plaintiff's claims for (1) wrongful termination in violation of public policy and (2) negligent misrepresentation. ECF No. 4 (motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). Both claims arise out of Plaintiff Kevin Bouknight's ("Bouknight's") employment with Defendant KW Associates, LLC ("Employer") and statements made to Bouknight by Defendant Jim Kirkham ("Kirkham") (collectively "Defendants"). For the reasons set forth below, the motion is granted and both claims are dismissed.

**BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On April 19, 2016, the Magistrate Judge issued a Report recommending Defendants' motion to dismiss be granted in full. ECF No. 19.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Bouknight filed

objections on May 6, 2016. ECF No. 27. Defendants filed a response on May 19, 2016 and Bouknight filed a reply on May 20, 2016. ECF Nos. 29, 32.[1] This matter is now ripe for resolution.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of an objection, the court reviews only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note)).

## DISCUSSION

For reasons explained below, the court adopts both the reasoning and recommendation of the Report. Defendants' motion to dismiss is, therefore, granted and Bouknight's claims for wrongful termination in violation of public policy ("Wrongful Termination") and negligent misrepresentation are dismissed. In light of the parties' agreement, this ruling applies to the third

---

[1] Defense counsel is reminded that the court requires no less than twelve point type in memoranda, including in footnotes. Local Civil Rule 1.05(C). This rule shall be observed in future filings.

(Wrongful Termination) and seventh (Negligent Misrepresentation) causes of action in the Second Amended Complaint.[2]

## I.  Adequacy of Objections

Defendants argue Bouknight's objections are either insufficiently specific or belatedly raised arguments and, consequently, do not warrant a de novo review. Bouknight challenges these arguments on reply, noting, in part, that some of his objections address arguments Defendants raised for the first time in their reply in support of the motion to dismiss. The court need not resolve this dispute as it finds both the Report's reasoning and recommendations proper under a de novo standard of review.

## II.  Wrongful Termination in Violation of Public Policy

Bouknight's Wrongful Termination claim is based on allegations he was terminated for hiring an attorney after he filed a workers' compensation claim.[3] The Report recommends this claim be dismissed because it is not based on either of the two previously recognized bases for a Wrongful Termination claim (where the employer requires the employee to violate the law or the termination is, itself, a violation of criminal law) or any other clear mandate of public policy. ECF

---

[2] Defendants' motion is directed to the third and sixth causes of action in the Amended Complaint (as it existed at the time of removal). *See* ECF No. 1-4 (Amended Complaint filed with removal papers). After the Report was entered, Bouknight filed a Second Amended Complaint, adding a claim for fraudulent misrepresentation and retaining (but renumbering) prior causes of action. ECF No. 26. Given the repetition of the challenged claims, Bouknight concedes the Second Amended Complaint does not moot Defendants' motion to dismiss. *See* ECF No. 27 at 4 n.2 (Bouknight's Objection Memorandum); *see also* ECF No. 29 (Defendants' Reply to Objection, noting Bouknight has agreed to strike the corresponding causes of action in the Second Amended Complaint in the event the court adopts the Magistrate Judge's recommendation). Rather than requiring further filing to strike these causes of action, the court dismisses them.

[3] Bouknight has also asserted a statutory claim under S.C. Code Ann. § 41-1-80 for retaliation for instituting a workers' compensation claim.

3

No. 19 at 2-4 (noting extension beyond the two recognized bases requires "plaintiff . . . to show a clear mandate of public policy."). Bouknight argues this recommendation is in error because South Carolina courts do not dismiss Wrongful Termination claims based on novel public policy theories at the pleading stage. ECF No. 27 at 2.

The court disagrees. Certainly, some South Carolina cases have denied motions to dismiss Wrongful Termination claims based on novel public policy theories to allow further development of the facts. *See*, *e.g.*, *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011) (noting two prior cases "declined to address whether the public policy exception applied because, in their procedural posture, it was not appropriate to decide the novel issue without further developing the facts of the case."). The South Carolina Supreme Court has not, however, held that its subordinate courts may not address such issues at the pleading stage. It has, instead, held that "what constitutes public policy is a question of law for the courts to decide[,]" which suggests the issue is one which may often, if not always, be resolved at the pleading stage. *Barron*, 713 S.E.2d at 637. The South Carolina Supreme Court also participated in resolution of a Wrongful Termination claim based on a novel public policy theory at the motion to dismiss stage by answering a question certified from the district court. *See Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385 (S.C. 2015) (holding South Carolina's public policy did not support the claim advanced); *see also* C.A. No. 2:13-cv-02497-RMG (D.S.C.), ECF No. 12 (motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)), ECF No. 23 (order certifying question))

In holding no clear or articulated public policy precluded an employer from terminating an employee for making a good faith report of a suspected crime, *Taghivand* explained as follows:

> Courts [in South Carolina] have invoked the public policy exception in two instances: (1) where an employer requires an employee, as a condition of continued employment, to break the law, . . . and (2) where an employer's termination is itself

4

> illegal[.] . . . While we have made clear that the exception "is not limited to these situations," we have specifically recognized no others. . . .
>
> We exercise restraint when undertaking the amorphous inquiry of what constitutes public policy. As the United States Supreme Court has recognized, "public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, *only with the utmost circumspection*." . . . This comports with our understanding that "[t]he primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." . . .

*Id.* at 387 (finding no "clear or articulable public policy" despite Taghivand's reliance on two statutory provisions and one common law crime relating to the general subject matter and rejecting argument "a broad public policy favoring the reporting of crimes can be derived from the legislature's decision to protect potential witnesses") (emphasis added).

As in *Taghivand*, Bouknight refers to various sources that touch on his proposed public policy: a right to consult and hire counsel without threat of termination. *See* ECF No. 27 at 6 (relying on General Assembly's recognition of South Carolina Supreme Court's power to regulate the practice of law, that court's adoption of rules of professional conduct, the South Carolina Constitution's recognition of a right to a "speedy remedy [in the state's courts] for wrong's sustained[,]" statutory provisions for fee-shifting in employment cases, and protections of the attorney-client privilege). These sources indicate a general recognition of the importance of legal counsel and the attorney-client relationship. As in *Taghivand*, however, these sources are too generic and peripheral to constitute a clear mandate of the particular public policy on which Bouknight's claim depends.

As noted in *Taghivand*, the at-will employment doctrine is, itself, "firmly rooted in the public policy of this state" and any exception to that doctrine "should emanate from the General Assembly, and from the [South Carolina Supreme] Court only when the legislature has not

5

spoken." *Id.* at 389. The General Assembly has, in fact, spoken as to the general subject matter by providing a statutory remedy for retaliation for instituting a workers' compensation proceeding. S.C. Code Ann. § 41-1-80.

Rather than providing the source of public policy for Bouknight's Wrongful Termination claim, Section 41-1-80 precludes such a claim to the extent it overlaps with the statutory remedy. As explained in *Barron*, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination." *Barron*, 713 S.E.2d at 637; *see also Stiles v. American Gen'l Life Ins. Co.*, 516 S.E.2d 449 (S.C. 1999) (holding Wrongful Termination claim should not overlap with statutory or contractual rights but "provide[s] a remedy for a clear violation of public policy where no other reasonable means of redress exists"); *Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (S.C. 1992) (holding Wrongful Termination claim is not available where the employee has a state or federal statutory remedy). Thus, to the extent challenged actions fall within the scope of a state or federal statutory anti-retaliation provision, they may not be pursued through a Wrongful Termination claim because there is another form of redress.

Actions that fall near but outside statutory anti-retaliation protections fail for a different reason. In such instances, the legislature has spoken on the subject matter and may be presumed to have provided the remedy it deemed appropriate. Courts may consider legislative intent in determining the scope of the statutory protection, potentially expanding the reach of the statute beyond its literal language. *See Johnson v. J.P. Stevens & Co., Inc.*, 417 S.E.2d 527 (1992) (interpreting reach of Section 41-1-80 fairly broadly); *but see Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 109 (4th Cir. 2014) (finding district court allowed too broad a claim under the statute). The court may not, however, engraft a Wrongful Discharge claim onto the periphery of

6

the protections it finds the legislature intended to provide.  To do so would be to ignore, rather than give effect to, legislative intent.[4]

For the reasons set forth above and in the Report, Bouknight's Wrongful Termination claim is dismissed.

## III.     Negligent Misrepresentation

The court also adopts the Report's reasoning and recommendation as to the negligent misrepresentation claim.  The court will assume without deciding that there are circumstances in which a negligent misrepresentation claim may be akin to a "lesser included tort" of a fraudulent misrepresentation claim as Bouknight argues.  This argument finds some support in the former's requirement that the false representation be made without due care and the latter's coverage of representations made with reckless disregard for the truth (in addition to intentionally false statements).  *Compare Turner v. Milliman,* 708 S.E.2d 766, 769 (S.C. 2011) (stating elements of negligent misrepresentation and fraudulent inducement claims); *M.B. Kahn Const. Co., Inc. v. S.C. Nat. Bank of Charleston*, 271 S.E.2d 414, 415 (S.C. 1980) (stating elements of fraudulent misrepresentation claim).  Here, however, the claim rests on allegations of an *intentionally false statement of future intent*:  Defendant Kirkman's statement Bouknight would have a job with Employer until he was ready to retire.  Because the claim relates to a future event, Bouknight must show Defendants knew the statement was false when made because they did not intend to honor the assurance at the time it was given.  This is, necessarily, an intentional rather than a negligent (or reckless) act.  *See Turner*, 708 S.E.2d at 769 ("A future promise is not fraudulent unless such

---

[4] Bouknight does not, in any event, rely on Section 41-1-80 in arguing that his termination was in violation of public policy.

promise was part of a general design or plan,, existing at the time, to induce a party to enter a contract or act as he or she otherwise would not have acted, to his or her injury."). Thus, given the allegations of this case, there can be no overlap between negligent and fraudulent misrepresentation. Bouknight's negligent misrepresentation allegations must, therefore, be dismissed for failure to state a claim.[5]

## CONCLUSION

The Report's recommendation is adopted in full for reasons stated in the Report and above. Bouknight's causes of action for Wrongful Termination in violation of public policy and negligent misrepresentation are, therefore, dismissed with prejudice.[6] This dismissal applies to these causes of action as asserted in the Second Amended Complaint.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 16, 2016

---

[5] As noted above, Bouknight has now asserted a separate claim for fraudulent misrepresentation.

[6] "Dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). That is the case here as to the two causes of action challenged.